## H. P. BISHOP v. E. F. JONES.

VALID SALE; *Preference of Creditors.* A debtor, financially embarrassed and in failing circumstances, may sell his property for the purpose of paying his debts; and if the sale is made in good faith and upon a sufficient consideration, the sale will be valid, although it may have the effect to defeat some of the creditors in the collection of their claims; and such a debtor in the sale of his property and in the payment of his debts may prefer some of his creditors over others. (*Arn v. Hoerseman,* 26 Kas. 413.)

*Error from Jackson District Court.*

REPLEVIN brought by *Bishop* against *Jones*, as sheriff of Jackson county. The facts appear in the opinion. Trial at the November Term, 1881, of the district court, and judgment for defendant. Plaintiff brings the case here.

*W. S. Hoaglin*, for plaintiff in error.

*Lowell & Walker*, and *J. C. Douglass*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought by H. P. Bishop against E. F. Jones, sheriff of Jackson county, Kansas, to recover certain property claimed by Bishop, which had been levied upon by Jones, on an order of attachment issued in an action in which Leiberman & Manheimer were plaintiffs, and Gilbert Bishop was defendant. It is admitted that Gilbert Bishop once owned the property, but it is claimed by the plaintiff H. P. Bishop, that Gilbert Bishop sold and transferred the property to him before the action of Leiberman & Manheimer against Gilbert Bishop was commenced. On the other side, it is admitted that such a sale was made, but it is claimed that the same is void as against the creditors of Gilbert Bishop, of which creditors Leiberman & Manheimer are a portion. The only substantial question presented to the court below for its determination was, whether the said purchase and sale were made in good faith and for a sufficient consideration, or were made in fact for the purpose of hindering, delaying, or defrauding the creditors of Gilbert Bishop. The case was tried by the court below without a jury, and the court made the following findings and conclusions of fact and law:

FINDINGS OF FACT.

"1. On the 28th day of February, 1881, one Gilbert Bishop was the owner of a stock of merchandise of hats, caps, shirts, boots, shoes, and notions, all of them being in a store at Holton, Kansas, and was then and there dealing with them in

the usual way as a merchant. Said property was then worth about $1,650, and was all he had, except some accounts for goods sold.

"2. On said February 28, pursuant to arrangement between said Gilbert Bishop and one Eli Evans, before that time made by correspondence between them, and upon the invitation of said Gilbert Bishop, said Evans, representing the firm of Patterson, Noyes & Co., of St. Joseph, Mo., went from Valley Falls, Kansas, to Holton, and visited the store of said G. Bishop about 7 o'clock P. M. of said day, and by an arrangement then and there, before 10 o'clock that evening consummated, the said G. Bishop made a sale of said goods and accounts to his brother H. P. Bishop, the plaintiff herein, it being agreed that said H. P. Bishop should, and he did, give to Patterson, Noyes & Co. his obligation in writing, payable at a future day, for $837.50, that being the amount of their claim for boots and shoes theretofore sold by them to said G. Bishop. The said H. P. Bishop was surety for said G. Bishop, upon a note then due for $500, with $70 accrued interest thereon, and said G. Bishop was indebted to H. P. Bishop in the sum of $240, on a note. The said Evans received for Patterson, Noyes & Co. the obligation above mentioned from the Bishops in payment of the said claim of $837.50. The said Evans was pressing the settlement of the claim of his principals, and induced the said G. Bishop to see the plaintiff and request him to buy the stock of goods above mentioned, and pay the claim of Patterson, Noyes & Co., which the plaintiff did, by taking the goods at a price agreed upon by the three, to wit: 70 cents on the dollar of the invoice taken January 1st, 1881, with amount of sales deducted, and purchases charged up; and the goods were turned over to the plaintiff.

"3. This sale and purchase were made for the purpose of securing the said Patterson, Noyes & Co. and the plaintiff from loss on account of their claims above mentioned, and was so understood between all the parties.

"4. No invoice of the goods was taken at the time of the sale. The plaintiff was to take them at 70 per cent. of $1,535.64, their then estimated value, their actual value being 77 per cent. of that sum. The plaintiff took the book accounts at 50 per cent. of $291.90, their value as estimated by them. Part of the obligations of plaintiff to Patterson, Noyes & Co., and part of the debts for which he was surety, have been paid. But whatever has been paid thereon came

from the proceeds of the sale of the goods and collection of the accounts above mentioned.

"5. On February 28, 1881, said Gilbert Bishop was largely indebted to others than Patterson, Noyes & Co. and the plaintiff, and that firm and the plaintiff knew such to be the fact at that time.

"6. From the time of said sale to the plaintiff until now, the said G. Bishop has, as the ostensible managing man, been selling from said stock, and the same has been replenished, upon the orders of said G. Bishop as the exigencies of the trade required; but nothing beyond the receipts of the sales or collections of accounts has been contributed by plaintiff thereto.

"7. On March 7, 1881, Leiberman & Manheimer, merchants of Kansas City, Missouri, commenced in this court an action against said G. Bishop, upon a claim for $310.60, for hats, caps, gloves and other merchandise, not including boots and shoes, before that time sold and delivered to said G. Bishop, which claim is admitted by the parties to be correct, and due at that time, and sued out an attachment in that cause, under which the sheriff of this county seized a portion of the goods in the store mentioned — chiefly hats, caps, gloves and other merchandise sold by said Leiberman & Manheimer to said G. Bishop.

"8. On March 8, 1881, the plaintiff commenced this suit against the defendant, he having the goods so seized in his custody as sheriff of Jackson county, Kansas, under the attachment above mentioned.

"9. The value of the goods at the time of the replevin thereof was $310.60."

CONCLUSIONS OF LAW.

"The sale of the goods and accounts by the said Gilbert Bishop to the plaintiff was void as to the creditors of G. Bishop, and the defendant has a right to a judgment for a return of the goods, or for $310.60, their value, and for costs."

The plaintiff duly excepted to these findings and conclusions, and also moved the court for a new trial, which motion was overruled, to which ruling the plaintiff also excepted; and the court below then rendered judgment in favor of the defendant and against the plaintiff in the alternative for the delivery of the goods, or for the sum of $310.60, in case the goods could not be had, and also for costs of suit; to which

judgment the plaintiff duly excepted. The plaintiff now brings the case to this court, and asks for a reversal of the judgment of the court below, upon the ground that the findings and conclusions of the court below do not sustain or authorize such a judgment.

We think the judgment of the court below is erroneous. There is no finding that the sale was made "with the intent to hinder, delay or defraud creditors of their just and lawful debts or damages," so as to make the sale fraudulent and void within the provisions of § 2 of the act for the prevention of frauds and perjuries, (Comp. Laws of 1879, p. 464;) nor is there any finding that the sale was without sufficient consideration; nor is there any finding that the sale was not a completed sale, or that the goods were not delivered to the purchaser. On the contrary, the court below finds in substance that the sale was made in good faith, for a valid and sufficient consideration; that the sale was completed; and that "the goods were turned over to the plaintiff." The court below finds that the "sale and purchase were made [not for the purpose of hindering, delaying or defrauding creditors, but] for the purpose of securing the said Patterson, Noyes & Co. and the plaintiff from loss on account of their claims above mentioned, and was so understood between all the parties." The goods were purchased and sold for seventy per cent. of their invoiced value, while they were worth seventy-seven per cent. of such value; hence the purchaser gave within seven per cent. of the actual value of the goods. But while the goods were worth only about seventy-seven per cent. of $1,535.64, they were really taken in payment of and to secure debts amounting to $1,647.50. Gilbert Bishop owed Patterson, Noyes & Co. $837.50, and owed the plaintiff, on a note, $240, and owed another creditor, on another note, for which the plaintiff was security, the sum of $570; and these goods were purchased and sold for the purpose of paying and securing all these debts, and this sale was not a mere inchoate sale, but it was actually completed and the goods delivered; or, in the language of the court below,

"the goods were turned over to the plaintiff" at the time of the sale. Can such a sale be considered fraudulent or void? We think not. (*Arn v. Hoerseman*, 26 Kas. 413.)

It matters but little whether the change of possession was permanent and continued, or not, for it seems from the facts found by the court below that it was "shown that such sale was made in good faith, and upon sufficient consideration." (Comp. Laws of 1879, p. 464, § 3.) It seems that Gilbert Bishop, since the sale, has been "the ostensible managing man." But evidently he managed affairs only as the agent of the plaintiff. Gilbert Bishop also owed several other persons besides Patterson, Noyes & Co. and the plaintiff; but a debtor, even in embarrassed circumstances, has a right to sell his property to pay his debts, and also to prefer creditors. If he could not sell his property, it would be difficult for him to pay his debts; and if he could not prefer one creditor to another, it would be equally difficult to pay his debts. If a debtor who has no money desires to pay his debts, he must first sell his property, and obtain the money with which to pay his debts; and when he comes to pay his debts, he must necessarily first pay one creditor before he pays another, for he could not easily pay all at the same time; and if he pays one creditor before he pays another, then he is giving a preference to the one he pays first over the others whom he expects to pay afterward.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the plaintiff and against the defendant.

All the Justices concurring.