C. H. DeFord, *as Sheriff of Greenwood County*, v. Ira
P. Nye.

1. **Chattel Mortgage** — *Validity* — *Preference.* A debtor in failing circumstances may prefer some of his creditors over others, and may secure such creditors by giving chattel mortgages upon his stock of merchandise; and where chattel mortgages are given to secure a just indebtedness to certain creditors, in the forenoon, and a general assignment of all the property of the debtor which remains after satisfying such mortgages is made in the afternoon of the same day, they do not necessarily constitute a single transaction, to be regarded as a general assignment; and in the present case, a finding that chattel mortgages so executed to secure just debts that were past due are valid is sustained.

2. **Husband and Wife** — *Insolvency of Husband* — *Preference.* Where a failing debtor is justly indebted to his wife and daughter under an

express contract for services performed by them as clerks in his store, he may rightfully prefer them to other creditors by an assignment or transfer of accounts or claims owing to him by his customers.

*Error from Greenwood District Court.*

REPLEVIN. Judgment for plaintiff at the May term, 1885. The defendant brings the case to this court. The opinion states the facts.

*T. L. Davis,* for plaintiff in error.

*D. B. Fuller,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of replevin, brought by Ira P. Nye against C. H. DeFord, to recover the possession of a stock of merchandise. The facts are substantially as follows: On and before January 13, 1885, one J. C. Tomlinson owned and was in the possession of the merchandise in controversy. At the same time, he was indebted in a large amount to various parties, and among others to a creditor represented by Ira P. Nye. He was pressing the payment of the claim, and demanding either cash or the possession of the goods at once, and was about to bring an attachment suit on his claim, which amounted to $552. Tomlinson gave Nye a chattel mortgage upon his goods to secure the claim, and Nye at once took possession of the goods under the mortgage. Immediately after the execution of this mortgage, Tomlinson executed other chattel mortgages upon the same goods to secure the claims of other creditors, and Nye, the defendant in error, was made agent of all the mortgagees. In the afternoon of January 13, 1885, being the same day on which the mortgages were executed, Tomlinson executed a deed of assignment, by which he assigned and transferred to Ira P. Nye, for the benefit of his creditors, all of the stock of goods which remained after satisfying the mortgages that he had theretofore given. On January 16, 1885, while the goods were in the possession of Nye, three creditors of Tomlinson

brought actions upon their respective claims, in which attachments were issued and levied upon the goods by the plaintiff in error, who was the sheriff of the county. On January 20, 1885, Nye brought this action, and by virtue of a writ of replevin recovered possession of the goods. The cause was tried at the May term, 1885, by the court without a jury, and it was found that the plaintiff was entitled to the immediate possession of the goods in controversy; and also, to $75 as his damages for the wrongful detention of the same, and judgment was accordingly given.

As a ground of error it is insisted that the chattel mortgages and the deed of assignment constituted one and the same transaction, amounting to a general assignment, and is consequently void. While the chattel mortgages and the deed of assignment were executed on the same day, they cannot be regarded as a single transaction. There is testimony showing that the mortgages were completed about nine or ten o'clock in the forenoon, and that the assignment was not made until late in the afternoon of the same day. The court specially finds that the mortgages under which Nye held the goods in controversy were valid and secured a just indebtedness which was all past due. When they were made, Tomlinson had complete dominion over the property, and had the unquestioned right to prefer one creditor over another; and this was substantially what was done. "It is well settled that an insolvent, as long as he retains a *jus disponendi* of his property, may appropriate it to the payment of his debts, and may prefer creditors. He may use all his property this way, or he may so use a part, and make a general assignment of the remainder." (*Bailey v. Kansas Mfg. Co.*, 32 Kas. 79.) And further along in the same opinion it is remarked that "there is nothing in the assignment act that prohibits the execution of chattel mortgages, or that prohibits transfer, by pledge or otherwise, of any kind of property to a creditor to secure the payment of a debt due to such creditor; nor is the execution of chattel mortgages, or the transfer of property to secure a creditor, against the spirit or intention of the statute regulating voluntary assignments.

(*Tootle v. Coldwell*, 30 Kas. 125.)" Although the evidence is somewhat conflicting with reference to the occurrences of the day when these instruments were made, there is competent testimony to show that there was no connection between the making of the mortgages and the deed of assignment, and that they were not intended nor treated as a single transaction. The finding that the debts were just, and the mortgages securing the same valid, is amply sustained by the evidence.

1. Valid chattel mortgage.

It shows that Tomlinson secured those creditors who were upon the ground pressing for payment or security, as he had a right to; and when these claims were secured he made an assignment of all that should remain after satisfying the same. The fact that both happened to be executed on the same day is not controlling. It was said in *Bailey v. Kansas Mfg. Co.*, supra, that "it is difficult to say upon what principle or for what reason a chattel mortgage, executed in good faith for the benefit of certain creditors upon the same day that the deed of general assignment is executed, must be considered as a single transaction." It is denied by the defendant in error that he had any knowledge that an assignment was to be made until some time after the mortgages were executed; and Tomlinson states that he did not determine upon an assignment until after the execution of the mortgages. But if the debts were just and the mortgages securing them executed in good faith, the fact that Tomlinson contemplated making an assignment when the mortgages were made will not of itself invalidate them. (*Dodd v. Hills*, 21 Kas. 707.)

There is a further complaint, that the deed of assignment did not contain a description of the property assigned, had no schedule attached, that no bond was given by the assignee, no appraisers were appointed, and, in fact, no steps taken under the assignment. These matters are wholly unimportant since it is found that the making of the mortgages and the execution of the assignment were separate and distinct transactions. Nye took and was holding possession of the goods in controversy under the mortgages. The reasonable value of the entire stock of merchandise, as found by the court,

was $1,603.22, while the indebtedness secured by the mortgages amounted to $2,310.78. As Nye was entitled to the possession of the property under the mortgages, independent of the assignmennt, his right of recovery in this action is clear, regardless of what the defects in the assignment may be.

There is a final objection that some of the book accounts were collected and appropriated by Tomlinson, with the knowledge of Nye and the consent of the mortgagees; but this objection is not well founded. The finding of the court, which is not without support, is that a few accounts were transferred by Tomlinson to his wife and daughter in payment of his indebtedness to them for their personal services as clerks in his store. He was justly indebted to them upon an express contract for a sum exceeding the amount of the accounts assigned to them. It appears that this was arranged for, and the accounts assigned before the property was taken possession of under the mortgages, and before the assignment was made. They were as much entitled to be considered as creditors of the husband and father, and had the

2. Wife and daughter, preferred creditors.

same right to ask and receive security or payment, as any other creditor; and as the debts were just, Tomlinson had a right to prefer them or secure their claims, and might do so without destroying the validity of the mortgages which he subsequently executed. (*Kennedy v. Powell*, 34 Kas. 22.)

We find no error in the record, and hence the judgment of the district court will be affirmed.

All the Justices concurring.