JAMES J. AVERY, *et al.*, v. W. J. EASTES.

SALES BY INSOLVENT DEBTOR; *Good Faith; Intent to Defraud; Instruction.*
    Where it was shown that Harris sold certain property to Somerville, and
    Somerville sold it to Eastes for $250, of which $185 was paid by Eastes
    in notes of one Dodson (made payable to Eastes,) and $65 in Eastes'
    note (made payable to Somerville,) and Harris was present at the time of
    the sale from Somerville to Eastes, and Somerville at the time of said sale
    handed said Dodson notes to Harris, and Harris handed them to his
    wife, and his wife afterward, with the consent of Dodson, paid $185 of
    debt due from Harris to Dodson by delivering said Dodson notes to
    Dodson, and Eastes at the time of the sale to him "knew Harris was
    indebted to Dodson about $200, and believed that the Dodson notes
    which he gave Somerville were to be turned over to Harris by Somer-
    ville, and by Harris to Dodson," and the defendants in the action
    claimed that said sales from Harris to Somerville, and from Somerville
    to Eastes, were made with the intention of defrauding Harris' creditors,
    *held*, that the following instruction given by the court to the jury was
    not erroneous, as against the defendants, to-wit: "If the jury believe
    from the evidence that Harris sold the property in question in good faith
    to pay any particular creditor of his, to the exclusion of others, without
    any intention to defraud, but simply to prefer one creditor to another,
    although the plaintiff (Eastes) may have had full knowledge of such
    intent on the part of Harris, it would not vitiate the purchase of
    Eastes."

### Error from Bourbon District Court.

TRESPASS, brought by *Eastes*, against *Avery*, a constable,
and *Gottlieb*, an execution-creditor of one Harris.   Trial at
the September Term 1875 of the district court.   Judgment
in favor of *Eastes* for $259.75, and costs.   *Avery* and *Gottlieb*
bring the case here.   The facts are stated in the opinion.

*Hulett & McCleverty*, and *McComas & McKeighan*, for
plaintiffs in error, contended, that the verdict is not sustained
by sufficient evidence.   The testimony shows a plain case of
fraud and conspiracy upon the part of Eastes, Harris, and
Somerville, to assist Harris in defrauding his creditors; and
as the general rule of reviewing courts is not to disturb the
verdict of a jury, so long as there is evidence to sustain it,
yet when, as in this case, the plaintiff's claim is made to rest

33—18 KAS.

upon his evidence alone, which was so much weakened in the cross-examination, and placed in such suspicious light by the testimony for the defense, that the court will find plenty of room to declare the verdict to be against the weight of the evidence. There was error also in the instruction to the jury respecting the pretended sale made by Harris. There was no evidence to base such an instruction upon. There is nothing in the testimony to show that Harris *at the time of sale* intended to satisfy any particular creditor with the proceeds of the property received from Eastes. It merely shows that he, through his wife, afterward used a portion of the proceeds to satisfy one of his creditors; not that the sale itself was made distinctly for such purpose.

*Harris & Spencer*, for defendant in error.

The opinion by the court was delivered by

VALENTINE, J.: Jacob Gottlieb commenced an action in a justice's court against T. D. Harris. An order of attachment was issued in said action, and delivered to James J. Avery, constable. Avery levied the same upon a team of horses, a wagon, harness, fly-nets, blanket, and whip, as the property of said Harris, and afterward sold the same. W. J. Eastes claimed the property, and commenced this action in the district court of Bourbon county to recover its value. A trial was had, and the plaintiff Eastes recovered a verdict and judgment against the defendants, Avery and Gottlieb, for the sum of $259.75. To reverse this judgment the defendants below as plaintiffs in error now bring the case to this court. They assign two grounds for error: 1st, that the verdict of the jury is not sustained by the evidence; 2d, that the court below erred in giving a certain instruction to the jury.

I. The question presented to the jury, and determined by the jury, was simply which side had the preponderance in a great mass of contradictory and conflicting evidence. Either side presented sufficient evidence, if it had been true, to have obtained the verdict in favor of that side; and the question

for the jury was, simply, which of the evidence it would believe, and which it would disbelieve. The jury found in favor of the plaintiff below, upon such evidence, and this court cannot now set the verdict aside.

II. The plaintiffs in error claim that the court below erred in instructing the jury that—

"If the jury believe from the evidence, that Harris sold the property in question in good faith to pay any particular creditor of his, to the exclusion of others, without an intention to defraud, but simply to prefer one creditor to another, although the plaintiff may have had full knowledge of such intent on the part of Harris, it would not vitiate the purchase of Eastes, the plaintiff."

We cannot say that this instruction was erroneous. It would seem from the evidence, that the property once belonged to Harris; that Harris sold it to Somerville, and Somerville sold it to Eastes. Harris was present at the time Somerville sold the property to Eastes. Mrs. Harris was probably also present. Eastes held Dodson's notes for $185, and interest. Harris owed Dodson about $200. When Eastes bought said property he gave to Somerville Dodson's notes, and one of his own for $65. Somerville then handed the Dodson notes to Harris, and Harris handed the same (probably at that time) to his wife. This was on Saturday afternoon, of January 16th 1875. On the next Monday morning, early, Harris left the state, and has never returned. A short time afterward Mrs. Harris sent said Dodson notes by Eastes to Dodson, and Dodson accepted the same as payment to that extent of his claim against Harris. Eastes testified on the trial, among other things, as follows:

"Don't know as Harris said much of anything at sale. He saw the trade taking place." "I knew Harris was indebted to Dodson about $200, and believed that the Dodson notes which I gave Somerville were to be turned over to Harris by Somerville, and by Harris to Dodson." "I turned the Dodson notes over to Somerville at the time I made the trade with him." "I turned them over when I bought the horses. Mrs. T. D. Harris got the notes. Somerville turned the notes over to Harris at that time." "T. D. Harris left the

notes with his wife. After that, she asked me if I ever saw old man Dodson. She asked me to turn the notes over to him, and I did so."

It would also seem from the evidence, that Harris, prior to said transactions, had been in the coal business, and that he failed in such business. He was then able to pay a portion of his debts, but not all of them. And he did pay a portion of his debts, but not all of them. A portion of the testimony of Dodson, brought out by the defendants below on cross-examination, will indicate something as to how Harris acted after his failure. Dodson says that he went to see Somerville after Harris left the state, "and made inquiries from him if Mr. Harris had left me [Dodson] the money, because I had understood that he had paid all other coal men up for their coal." Now it is fair to infer from the foregoing facts, that said sale was made to Eastes by Somerville in the presence of Harris, for the purpose of obtaining funds to pay Dodson, and that it was all in good faith. After Harris left the state, and after Dodson received said notes, he had a settlement with Mrs. Harris, and she paid him the balance of his claim. Taking into consideration the foregoing facts, we do not think that said instruction was erroneous.

The judgment of the court below will be affirmed.

All the Justices concurring.