ADOLPH SINGER, Respondent, v. JACOB GOLDENBURG, CHARLES B. FRANKE, Interpleader, Appellant.

**May 4, 1885.**

1. EVIDENCE—COMPETENCY OF TO SHOW PURPOSE AND INTENT.—In a contest between the creditor of an alleged fraudulent debtor, and an interpleader who has purchased a stock of goods from said

debtor, any evidence tending to show that said debtor purchased the goods with the intent then formed in his mind to cheat and defraud those from whom he purchased them, naturally and necessarily has a tendency, in connection with proof that he had not paid for the goods, to show that his intent in making the sale of the same goods at a subsequent period, was to carry out and complete the fraudulent intent and design formed when the purchase of the goods was made, and such evidence is admissible in such a contest. And although the fraudulent debtor is not a party to such controversy, the intent with which he sold the goods to the interpleader is a part of the issue in the controversy and any competent evidence, bearing upon and explaining that intent, is admissible in such a controversy for the purpose of showing what was that intent.—Bump on Fraudulent Conveyances (3 ed.) p. 582.

2. Same.—Possession by Interpleader.—Burden of Proof.—When the interpleader has possession of the goods at the time of their seizure by the creditor under writ of attachment he has *prima facie* title by reason of his actual possession ; and the burden of proof is on the attaching creditor to show that the interpleader's *prima facie* title is wrongful and fraudulent.

3. Insolvency.—Right to dispose of property notwithstanding, and to prefer creditors.—It is settled law that the insolvency of a debtor does not deprive him of the right to dispose of his property ; he may still do this in any way he may think proper, provided he does so "for an honest purpose and not to withdraw it from process for his just debts."—*Dougherty* v. *Cooper*, 77 Mo. 581. And "the power of a debtor to sell implies the corresponding right of another to purchase. Mere insolvency alone does not vitiate any transfer." In addition to the indebtedness there must be "an intent on the part of the debtor to delay, hinder, or defraud creditors."—Bump on Fraudulent Conveyances (3 ed.) p. 195. It is equally well settled that a debtor has the right to prefer a particular creditor over his other creditors, even if by so doing he should hinder and delay his other creditors ; and it is no objection to an assignment made to pay a *bona fide* debt, that the intent of the parties was to postpone or hinder other creditors. "The debtor is not permitted to hinder, delay or defraud his creditors, but he is at liberty to pay them in such order as he prefers where there is no claim of priority." An insolvent debtor can sell all or any part of his property for the purpose of applying the proceeds of the sale to the payment of the honest debt due any particular creditor ; such a purpose is honest ; and another with knowledge of such purpose on the debtor's part may legally pur chase the latter's property.

Appeal from Grundy Circuit Court, Hon. G. D. Burgess, Judge.

*Reversed and remanded.*

Statement of case by the court.

On Nov. 30th, 1881, the plaintiff in this case brought suit against the defendant, by attachment, for the recovery of $1,200 due for goods sold by plaintiff to defendant in August, 1881.

Under the writ of attachment, issued in this case, the sheriff levied upon and seized a large lot of boys' and men's clothing as the property of Goldenburg, at the time being in the possession of Charles B. Franke.

Franke duly filed his interplea, claiming as his property the goods so seized. The plaintiff in answer to the interplea, alleged that Franke had made, of the goods attached, a pretended purchase of the defendant Goldenburg, fraudulently, with the intent to hinder, delay, and defraud his, Goldenburg's, creditors, and especially plaintiff; and the plaintiff also charged a conspiracy between Goldenburg, Franke and one Nusbaum for the purpose of defrauding plaintiff and the other creditors of Goldenburg. At the trial plaintiff introduced evidence tending to show, that Goldenburg sold and transferred the goods in evidence to Franke with the intent to hinder, delay, and defraud plaintiff and the other creditors of Goldenburg, and that Franke knew of such intent at the time of the sale to him.

The interpleader, Franke, introduced evidence tending to show that he purchased the goods in good faith with no knowledge of such intent on the part of Goldenburg; and that he had paid Goldenburg the full value of the goods, in money to the amount of $2,000 and in his notes for the remainder of the purchase price, which notes he was amply able to pay. The evidence in this case showed that Goldenburg bought most of his goods until 1881 of Nusbaum. During 1881 he made one or two small orders of him but began trading principally with the Chicago houses.

In August, 1881, he gave Allen, agent for Singer, an order for about $1,700 worth of goods. As the order

was larger than usual, Allen inquired as to his indebtedness and was told by Goldenburg that he did not owe Nusbaum and was worth several thousand dollars above his indebtedness. Allen sent in the order, but the house held the order until Goldenburg should come to Chicago. Goldenburg reached Chicago in the last of August. He went to Singer's and paid the balance due the house and remarked that he would pay all his indebtedness that day. When inquired of as to his indebtedness, he denied owing Nusbaum anything, said he was worth $7,000 or $8,000 above his indebtedness—was not going to handle Nusbaum's goods, but patronize Chicago houses.

To other Chicago houses he gave evasive answers or no answers at all. He made large orders for goods while there, some of which were sent, while others were not. To all said statements made by Goldenburg to Allen and others, Francke unsuccessfully objected, for the reason that they were made, not in his presence. Numerous witnesses testified as to the conduct of Goldenburg in making the purchases of the goods in evidence, their testimony tending to show that he purchased the goods with the intent to cheat and defraud the parties from whom he purchased them. In the cross-examination of W. H. Wilson, the sheriff, the plaintiff against Franke's objection was permitted to show that Franke had bought a part of Goldenburg's household goods, which were sold at public auction and which were not seized by the sheriff under the writ of attachment.

The evidence showed that Franke made the purchase of the goods attached, from Goldenburg, in November, 1881, a few days prior to the bringing of this suit. From the evidence the jury could have reasonably inferred that Nusbaum was a *bona fide* creditor of Goldenburg, and that Goldenburg made the sale to Franke in good faith, for the purpose of paying his debt to Nusbaum, and that after the sale he did apply the entire purchase price of the goods, both the $2,000 in cash and all the notes given by Franke for the deferred payments, upon the Nusbaum debt, by giving the cash and indorsing the notes to Nus-

baum on that account—the Nusbaum debt exceeding in amount both the cash and the face of the notes. The evidence, on the other hand, tended to show that Nusbaum was not a *bona fide* creditor of Goldenburg, and that the whole transaction between them was fraudulent, and was had for the purpose of defrauding plaintiff and Goldenburg's other creditors. For the interpleader the court gave the following instructions :

4. The court instructs the jury that the only issue on trial in this case is whether the property attached was, at the time thereof, the property of the interpleader, C. B. Franke, or not. And the court further instructs the jury, that if they find that said interpleader was in actual possession of said property when the attachment was levied, then the law presumes that such possession was rightful and lawful, and that said interpleader was the owner of said property.

5. It is admitted by the pleadings in the case that Franke was in the possession of the goods at the time of the levy and seizure thereof.

6. The court instructs the jury that if·they find from the evidence that Jac. Goldenburg sold and conveyed the property in question, to the interpleader, Franke, and that Franke paid therefor a valuable consideration in notes and money, then the law presumes that such purchase was made on the part of said Franke in good faith, and honestly, and the court instructs the jury that if said purchase was so made by said Franke, then the jury will find for him, the said interpleader.

7. Even though the jury may believe from the evidence that Goldenburg and Nusbaum entered into a conspiracy or agreement to hinder, delay, or defraud the creditors of Goldenburg out of their just debts, and though they may further believe from the evidence that pursuant to said conspiracy or agreement to hinder, delay, or defraud the creditors of Goldenburg out of their just debts, Goldenburg proposed to sell, and did sell said goods to Franke ; yet the jury must find for the interpleader, Franke, unless they believe from the

evidence that Franke at the time he bought, had knowledge that Goldenburg was selling for the purpose of hindering, delaying, or defrauding his creditors.

8.   In this cause, under the pleading, the jury must find for the interpleader, Franke, unless they are satisfied by a preponderance of evidence, that Goldenburg made the sale of the goods in dispute to Franke, for the purpose of hindering, or delaying, or defrauding his creditors; and that Franke had knowledge that Goldenburg was selling for that purpose and with that intent.

9.   Franke's right to the goods acquired under his purchase from Goldenburg cannot be impeached or defeated by plaintiff for any fraudulent intention on the part of Goldenburg, or of Goldenburg and Nusbaum, in making said sale, unless Franke at the time had knowledge of or knowingly aided such fraudulent design..

The court refused to give the following instructions asked by the interpleader:

"1.   The jury are instructed that the statements of Goldenburg as to his indebtedness and financial condition, not made in the presence or hearing of Franke, are not to be considered as evidence against Franke, and in determining whether Franke acted in good faith in purchasing the goods from Goldenburg, the jury will wholly disregard all of Goldenburg's statement made out of the presence and hearing of Franke, and the jury are further informed that in making up their verdict they are not to consider G.'s statement made out of the presence and hearing of Franke; and the jury are further informed that in making up their verdict they are not to consider G.'s statement made to Chicago houses in order to obtain credit."

"2.   If the jury find from the evidence that Goldenburg, at and prior to the time when he sold his stock of goods to Franke, was indebted to Nusbaum, and that Goldenburg wanted to give Nusbaum a preference over his other creditors, and that Nusbaum was working to obtain a preference over other creditors, and to have his

debt satisfied out of the proceeds to be derived from a sale of the goods to Franke, and Franke knew that Nusbaum was working for that purpose and that Goldenburg was intending to aid Nusbaum by giving him a preference over other creditors; yet a knowledge by Franke of these facts and purposes would not render a sale to Franke fraudulent or void as against the creditors of Goldenburg. Nor would the fact that he knowingly aided Nusbaum to obtain such a preference over the other creditors of Goldenburg, render such sale to him fraudulent or void in favor of such other creditors."

"3. Hence if the jury find that Goldenburg was indebted to Nusbaum, and that Goldenburg was designing to prefer Nusbaum, and Nusbaum to obtain a preference over other creditors of Goldenburg; yet unless the jury shall find that there was an intent on the part of Franke to hinder, delay, or defraud the creditors of Goldenburg, they must find for the interpleader, Franke; and the intent to hinder, delay, or defraud the creditors of Goldenburg, can not be inferred from the mere fact that Franke may have, prior to the sale, had knowledge that Goldenburg was intending to prefer Nusbaum to his other creditors."

"10. Notwithstanding the jury may believe from the evidence, that at the time of the sale of the stock of the goods by Goldenburg to the interpleader, Franke, said Goldenburg was largely indebted to various wholesale merchants on account of the purchase of the goods or some of them, then on hand, yet the court instructs the jury that the fact that said Goldenburg was so indebted did not preclude him from selling said goods, either at retail or altogether at a single sale to one purchaser; and that said Goldenburg had the lawful right to make such sale for the purpose of paying any particular creditor, or creditors, to the exclusion of all the others of his said creditors."

This 10th instruction the court gave with the following proviso added thereto, "provided that the person who purchased the same did so in good faith."

The court of its own motion also gave the following instruction:

"12. The statements of Goldenburg, in order to obtain credit, as to his financial condition, at the time of the purchase of the goods, are evidence against him alone, for the purpose of showing his intent, whether honest or not, in making the sale to Franke, and the jury will not consider the same as against Franke, unless they believe the sale by Goldenburg to Franke was made for the purpose and intent to hinder, delay, or defraud the creditors of Goldenburg, and that Franke had knowledge of such intent at the time he made the purchase."

The court at the instance of the plaintiff gave the following instructions:

"1. Although the jury may believe from the testimony that Franke purchased the goods of Goldenburg for his own use or benefit, and paid full value therefor, if they further believe from the testimony that Goldenburg transferred the goods to Franke with the intent to hinder, delay, or defraud any of his creditors, and that Franke knew of such intent at the time of purchase, then the jury will find for the plaintiff, A. L. Singer."

"2. If Goldenburg sold his goods and book accounts to the interpleader, Franke, with the intent to hinder or delay any of his creditors in the collection of their demands against him, and if Franke had knowledge of such intent at the time he purchased such goods and accounts, then the transaction was fraudulent as to the creditors of Goldenburg; and if the jury so find, they should find the issues for the plaintiff, and return their verdict as follows: We the jury find the issue so far as the goods and book accounts are concerned for the plaintiff, A. L. Singer."

"3. The court instructs the jury that fraud, like any other fact, may be established by circumstances; and if the jury believe from all the facts and circumstances in proof that in and by the sale of the goods and book accounts to Franke, Goldenburg intended to hinder or delay any of his creditors in the collection of their de-

mands against him, and that Franke knew of such intention at the time he bought the goods and accounts then the jury ought to find the issue for the plaintiff in the form of verdict below given."

"4. If Goldenburg sold the goods and accounts to Franke with intention of hindering or delaying his creditors in the collection of their demands against him, and if Franke knew of such intention at the time he purchased the goods and accounts, then the transaction is fraudulent as to Goldenburg's creditors, even though Franke may have paid full value for the goods and books."

"5. The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and they are not bound to give to the testimony of any witness any other or greater weight than from all the facts and circumstances they may believe it entitled to; and if the jury believe that any witness has wilfully sworn falsely to any material fact in the case, they are at liberty to disregard the whole of such witness's testimony."

"6. The jury are the sole judges of the weight of the testimony and of the credibility of the witnesses; and in determining the issues in the case, the jury should take into consideration the whole of the evidence and all the facts and circumstances proved on the trial, giving to the several parts of the evidence such weight as the jury think it entitled to; and in determining the weight to be given to the testimony of the several witnesses, the jury shall take into consideration their interest in the event of this suit (if any such is proved), their conduct and demeanor while testifying, their appearance on the stand, the reasonableness of the story told by them, and all the evidence and circumstances tending to corroborate or contradict such witnesses, if any such proved."

The jury found for the plaintiff, and the interpleader has brought the case here by appeal.

CROSBY JOHNSON with R. A. DEBOLT and A. W. MULLINS, for appellant.

I.   The court erred in allowing proof that interpleader got part of debtor's household goods at auction.   These goods were not *attachable* nor involved in this controversy.—*Blair* v. *Corby*, 29 Mo. 480; *Golson* v. *Ebert*, 52 Mo. 260.

II.   The court erred in allowing testimony of declarations and statements made by debtor at time of purchase. Interpleader was not present.   There is no pretence of any conspiracy or combination between them at the time.—*Stockwell* v. *Blarney*, 129 Mass. 312; *Boyd* v. *Jones*, 60 Mo. 484; *Latham* v. *Agnew*, 70 Mo. 48.

III.   Instruction 10, as asked by interpleader, should have been given.   It asserted the right to prefer one creditor over the others and to sell his goods to effect that purpose.   That such is the law cannot be disputed. —*Shelley* v. *Boothe*, 73 Mo. 74 and cases cited; *Forrester* v. *Moore*, 79 Mo. 651.   The fact that the goods were bought on credit would not interfere with the exercise of this right.—*O'Donald* v. *Constant*, 82 Ind. 212; *Atwood* v. *Impseer*, 20 N. J. 150.   The court also erred in modifying this instruction.—*Dougherty* v. *Cooper*, 77 Mo. 528.

IV.   The court erred in refusing instruction 3, asked by interpleader.   The mere knowledge of the preferred creditor that the debtor, in giving the preference, intended to hinder and delay other creditors, and that the preference would necessarily have that effect, is not sufficient to render the sale invalid.—*Shelley* v *Boothe*, 73 Mo. 74.

V.   The court erred in refusing instruction 2, asked by interpleader.   It is lawful for a debtor to give and a creditor knowingly to accept a preference; and it cannot be unlawful for any one to aid or assist them in consummating the transaction.   No one has a right to complain of any act which another has the right to perform.—Cooley on Torts 688. (1st ed.).

VI.   The court erred in refusing to give instruction 1, asked by interpleader, and in giving of its own motion instruction No. 12.   There was no proof that these parties

were co-partners; none of agency or conspiracy. The conversations were not contemporaneous with the main fact under investigation; were not connected with it and had no tendency to illustrate its character. The court did not properly restrict their consideration and effect.

VII. The court erred in allowing the depositions to be read in evidence against interpleader's objection. They were wholly irrelevant. Their purpose was only to create prejudice. The evidence of other witnesses at the trial upon other and collateral matters were utterly irrelevant to any issue in the case. Their only effect would be to create prejudice and distract attention from issue.

VIII. The motion in arrest of judgment should have been sustained. Upon the pleadings it appears that plaintiff, as against interpleader, is not entitled to succeed in this controversy.

GEORGE HALL, SHANKLIN, LOW & MCDOUGAL, and E. M. HARBER, for appellee.

I. The evidence shows that the interpleader had very close relations with the fraudulent debtor and Nusbaum, his friendly creditor; and that they co-operated together against other parties in their own interests. Their conduct in this transaction indicates that they fully understood each other, and acted with reference to a particular result. The issues were fairly decided by the jury in favor of the plaintiff, and the evidence fully justified it.

II. The complaint of irrelevant testimony is not well grounded. The auction sale and other things tended to show the relation between these parties. But in any event it did not tend to mislead or prejudice the minds of the jury, and was in no way connected with the transaction in controversy—*Blair* v. *Crosby*, 29 Mo. 480; *Golson* v. *Ebert*, 52 Mo. 260. It is not Goldenburg's character we are investigating; it is the *intent* that prompted him to dispose of his property, in such an unusual manner as he did. Neither do we charge a conspiracy. "Evidence as to the conduct and declaration of the debtor, prior to the transfer, is admissible to prove the fraud on his part; and *if this is proved* the knowl-

edge of it on the part of the grantee may be proved by any circumstances tending to show a participation in the design of the debtor, and this without showing knowledge by grantee of particular acts.—Bump on Fraud. Conv., 344 and cases cited; *Crow* v. *Ruby*, 5 Mo. 484; *Pierce* v. *Hoffman*, 24 Vermont 525; 1 Greenl. Evid. (Redfield's ed.), sect. 53; *Rope* v. *Alkin*, 77 Mo. 644. And these authorities apply to the objections to the testimony and depositions of other witnesses, and the action of the court in refusing instructions asked by interpleader.

III. We agree that there may be an honest preferring of a creditor to pay a just debt, and the creditor must accept or buy in good faith.—*Shelley* v. *Boothe*, 73 Mo. 74. But in this case the interpleader was not a creditor of Goldenburg and did not "purchase from an honest purpose to secure his own debt." The instructions given for him on these points are more favorable than the law warrants. There was no evidence tending to show an honest purpose to prefer Nusbaum over others.—*Turner* v. *R. R.*, 51 Mo. 501; *Lester* v. *R. R.*, 60 Mo. 265; *Capital Bk.* v. *Armstrong*, 62 Mo. 59.

IV. The instructions, *considered as a whole*, are in strict harmony with the well-established principles of the law applicable to such cases, and when viewed in the light of the testimony are more favorable to appellant than the law or the facts seem to warrant.

V. There is nothing in appellant's objection to the sufficiency of respondent's answer. This is a controversy between plaintiff and interpleader grafted upon an attachment suit brought by plaintiff against Goldenburg; and the issues are squarely made. The answer was undoubtedly good after verdict.

Opinion by HALL, J.

I.

The interpleader complains of the action of the trial court in permitting plaintiff to show by the sheriff, Wilson, that the interpleader bought a part of Goldenburg's household goods, which were sold at public auction.

While it is difficult for us to see what bearing the testimony had upon the issue in this case, we cannot perceive how the admission of the evidence could in any way have injured the interpleader.

## II.

The interpleader complains of the action of the trial court in permitting plaintiff to introduce in evidence statements made by Goldenburg to Allen and others, touching his responsibility while purchasing the goods in suit, and in permitting plaintiff to introduce in evidence the depositions of certain named witnesses, and in refusing to give instruction No. 1, asked by the interpleader, and in giving instruction No. 12 of the court's own motion.

One position of the interpleader as to the statements made by Goldenburg, not in the presence of the interpleader, is, that those statements might have a tendency to show that Goldenburg intended to cheat and defraud those from whom he purchased the goods in August, but that they could have no tendency to show a fraudulent intent on the part of Goldenburg in making the sale to Franke in November. We think that any evidence tending to show that Goldenburg purchased certain goods in August, with the intent then formed in his mind to cheat and defraud those from whom he so purchased them, naturally and necessarily has a tendency, in connection with proof that he had not paid for the goods, to show that Goldenburg's intent in making the sale of the same goods in November was to carry out and complete the fraudulent intent and design formed when the purchase of the goods was made in August, and that such evidence was admissible in this case. Another position taken by the interpleader as to those statements made by Goldenburg is, that, as to the controversy between plaintiff and the interpleader, the defendant Goldenburg is a stranger, and that, on general principles, those statements cannot be evidence for or against either party to this controversy. Although Goldenburg is not a party to this controversy, the intent with which he sold the goods to

Franke is a part of the issue in this controversy and any competent evidence, bearing upon and explaining that intent, was admissible in this controversy for the purpose of showing what was that intent.—Bump. on Fraudulent Conveyances (3rd ed.) p. 582. As just said above, this evidence does tend to show what that intent of Goldenburg was, and it was therefore admissible.

We think that instruction No. 12, given by the court of its own motion with sufficient clearness, informed the jury for what purposes they should, and for what purposes they should not consider those statements of Goldenburg. That instruction stated to the jury that those statements were evidence only for the purpose of showing Goldenburg's intent in making the sale of the goods to Franke.

That this is the meaning of the 1st clause of that instruction is clear and certain, but in the 2nd clause the court directs as follows, "and the jury *will not consider the same against Franke*, unless they believe, etc."

And on account of this 2nd clause the interpleader makes his chief objection against this instruction, contending that it must mean, either, that the jury should consider those statements of Goldenburg in connection with all the other evidence in the case, in determining the intent of Goldenburg in making the sale to Franke and *the knowledge of Franke* of that intent at the time of the sale; or that the jury should determine from the other evidence alone, excluding those statements, Goldenburg's intent and Franke's knowledge of it, and that if they found Goldenburg's intent fraudulent, and that Franke knew it at the time of the sale, then they might consider the statements against Franke; in which latter case the statements as evidence would be useless, the jury having already decided the case before having the right to consider them.

But the instruction as a whole is not open to the objection made upon the 2nd clause of it. The language of the 2nd clause is peculiar in directing that "the jury will not consider the same as against Franke unless they believe," etc.

But this peculiarity is wholly on account of an equal peculiarity of the language of the 1st clause of the instruction, which declares that "the statements of Goldenburg," etc., "are evidence *against him alone* for the purpose of showing his intent," etc., "in making the sale to Franke." Goldenburg not being a party to the controversy, there was no evidence against him; it was all against Franke. But the unmistakable meaning of this instruction, somewhat unfortunately worded, taken as a whole, is, that the jury should consider those statements of Goldenburg only and solely for the purpose of finding with what intent Goldenburg made the sale to Franke. For this purpose we think that the statements were competent evidence. We think that the instruction was proper. We also hold that instruction No. 1 asked by the interpleader was properly refused by the court, because it withdrew those statements from the jury's consideration.

As to the depositions, on account of whose introduction in evidence the interpleader objects, it is true that they may not throw much light upon the issue in this case; still they do throw some light upon it. They tend to show a state of facts and circumstances, from which, had it existed, the jury might have reasonably inferred that in August and September, 1881, Goldenburg purchased the goods in suit with the intent to cheat and defraud those from whom he so purchased them, and the depositions, in that way, in connection with the other evidence in the case and the proof that Goldenburg never paid for any of the goods, tend to show that, in making the sale to Franke, he intended to carry out that original design. For these reasons the depositions, in our opinion, are competent evidence.

To illustrate, take the deposition of Henry Solomon as an example of the depositions. In that deposition Solomon states that Goldenburg first did business with his house in March, 1880; that Goldenburg bought a few goods in March, 1880, in amount from $40 to $400; that from March, 1880, until September, 1881, Goldenburg's

business with his house in all, did not amount to much, and that Goldenburg paid for the goods purchased by him almost at maturity, except in one instance in which the bill was a little past due.; that in Sept.,1881, Goldenburg went to Chicago and paid his house the balance of the account due it, about $200, and then bought, or rather ordered of it, a bill of goods amounting to $2,400 ; that this bill of goods was larger than any bill ever before purchased by Goldenburg, and that witness's house, for that reason, called upon Goldenburg for a statement of his financial condition, which he flatly refused to make ; that under the circumstances witness's house refused to ship the goods.    Now this evidence is not the strongest evidence of any fact at issue in this case, still we think the evidence competent.    The evidence in this case tends to show that in August and September, Goldenburg bought of various parties many thousands of dollars worth of goods, for none of which he paid, and in which goods were included most of the goods attached ; the goods attached having been sold to Franke by Goldenburg in November, 1881.    Evidence tending to show that Goldenburg, in August and September, attempted also to purchase other goods, in addition to those actually purchased by him, in quantities much larger than ever before purchased by him, and all on time, and that he did so in such a manner and under such circumstances, as to cause those from whom he endeavoured to so purchase to refuse to sell to him, is competent.

That evidence throws light upon the character of the intent had by Goldenburg at the time of making the purchases in August and September, which intent was material and proper for the jury's consideration in determining the character of the intent had by Goldenburg in selling to Franke the goods, thus purchased and still unpaid for, in November.

### III.

The interpleader also complains of the action of the trial court in refusing to give instructions numbered 2, 3 and 10, asked by him ; and in giving said instruction numbered 10 as modified by the court.

The interpleader testified that he bought the stock of goods for the dollars and cents he thought there were in the trade; that Goldenburg told him that he did not owe anybody but Nusbaum; and that he did not know how much Goldenburg owed Nusbaum. And the plaintiff contends that the court, if for no other reason, properly refused those instructions because they are based upon a theory of the case contradicted by the interpleader's own testimony. But the interpleader had *prima facie* title to the goods by reason of actual possession of them at the time of their seizure under the writ of attachment. The burden of proof was on the plaintiff to show that the interpleader's *prima facie* title was wrongful and fraudulent, and the interpleader was entitled to have all theories of the case supported by the evidence in the case, although contradicted by his own testimony, submitted to the jury. The jury might not have believed his testimony, and still if properly instructed might have found no fraud in his *prima facie* title, notwithstanding they might have found the existence of certain facts denied by him. Thus, although Franke, the interpleader, in effect denied any knowledge of Goldenburg's intent, in making the sale to him, to prefer Nusbaum by paying Nusbaum's debt with the proceeds of the sale, and also any purpose on his, Franke's, part, in making the purchase, to enable Goldenburg to so prefer Nusbaum, still there was other evidence from which the jury might have reasonably inferred such an intent on the part of Goldenburg and such a purpose on the part of Franke; and Franke had a right to an instruction by the court, telling the jury that neither such an intent nor such a purpose was fraudulent, if such be the law.

It is settled law that the insolvency of a debtor does not deprive the debtor of the right to dispose of his property. He can still dispose of his property in any way he may think proper, provided he does so "for an honest purpose and not to withdraw it from process for his just debts." —*Dougherty* v. *Cooper*, 77 Mo. 581. And "the power of a debtor to sell implies the corresponding right

of another to purchase. Mere insolvency alone does not vitiate any transfer." In addition to the indebtedness there must "be an intent on the part of the debtor to delay, hinder, or defraud his creditors."—Bump on Fraudulent Conveyances (3rd ed.) p. 195.

It is equally well settled that a debtor has the right to prefer a particular creditor over his other creditors, even if by so doing he should hinder and delay his other creditors.—*Shelley* v. *Boothe*, 73 Mo. 77. And "it is no objection to an assignment made to pay a *bona fide* debt that the intent of the *parties* was to postpone or hinder other creditors."—*Lane* v. *Ewing*, 31 Mo. 75. "So long as the property of a debtor remains in his hands unshackled by liens and incumbrances, his power over it is absolute, and he can, in the absence of any statute, dispose of it by the way of satisfaction to his creditors as well as by sale. A debtor therefore has discretion within the limits of fraud."—Bump on Fraudulent Conveyances, p. 180. .An insolvent debtor may sell his property, then, if he do not so with the intent to hinder, delay, or defraud his creditors ; another may buy the property ; and an insolvent debtor can prefer one creditor over his other creditors. It necessarily follows that an insolvent debtor can sell all or any part of his property for the purpose of applying the proceeds of the sale to the payment of the honest debts of any particular creditor ; that such a purpose is an honest purpose ; and that another with knowledge of such purpose on the debtor's part may legally purchase the latter's property.

In *Avery* v. *Estes* (18 Kas. 507), the following instruction was approved: "If the jury believe from the evidence that Harris sold the property in question in good faith to pay any particular creditor of his, to the exclusion of others, without any intention to defraud, but simply to prefer one creditor to another, although the plaintiff may have had full knowledge of such intent on the part of Harris, it would not vitiate the purchase of Estes by plaintiff."

In *Bedill* v. *Chase* (34 N. Y. 387–388), the court says:

" He was also right in declining to charge that, if the sale was made by Bedill & Co., in contemplation of insolvency, for the purpose of enabling them to prefer a portion of their creditors, and this was known to the plaintiffs, the transaction was in effect a general assignment by reason of the credit given to purchasers. There was no evidence to authorize the assumption that the plaintiffs had any knowledge of the purpose imputed to the vendors. Such a purpose if it existed was not unlawful. The debtor is not permitted to hinder, delay, or defraud his creditors, but he is at liberty to pay them in such order as he prefers where there is no claim of priority."

In *Ruhl* v. *Phillips et al.* ( 48 N. Y. 31 ), it is said : " This object, although known to Phillips at the time of his purchase, did not render it fraudulent as against the plaintiff or any of his creditors who were not to be so preferred. A debtor, notwithstanding his insolvency, is allowed to make such preference if *bona fide*, and a sale for that purpose is not invalid."

In *Gregor et al.* v. *Harrington et al.* ( 33 Vt. 245 ), the court said : "The doctrine has ever been recognized in this state that a debtor may pay or secure one creditor to the exclusion of another. * * * In this case, if the principal debtor had transferred the property itself to the same persons to whom he transferred the notes he took for it and for the same purpose, no person would claim that he had not a perfect legal right to do so; or if he had sold the property and taken the money for it and had applied the money in the same manner, it would not have been fraudulent. The purpose was not to keep his property away from his creditors, but to pay to his creditors, he exercising his legal right to prefer such as he chose. Fraud does not consist in transferring property with the view to prefer one creditor to another, but in transferring property with the intent to prefer one's self to all his creditors."

Whether or not an intent is fraudulent is a question of *law*, and "it is the province of the court to instruct the

jury as to what intent is in the law fraudulent."—Bump on Fraudulent Conveyances, p. 26. Hence we think that the circuit court erred in refusing to give instructions 2 and 3 asked by the interpleader. We do not think that instruction No. 10, as asked by the interpleader or as given by the court, was a substitute for those instructions 2 and 3. Had the latter instructions been given it would have been unnecessary to have given No. 10.

For this error the judgment of the circuit court will be reversed and the cause remanded.

## IV.

The interpleader contends that the motion in arrest of judgment, made by him, should have been sustained, for the reason that the answer of plaintiff to the interplea fails to allege that the debt sued for in the attachment suit was existing at the time of the alleged fraudulent sale by Goldenburg to Franke. The petition in the attachment suit alleges that the debt of $1,200 sued for is due for goods furnished by plaintiff to Goldenburg in Aug., 1881. The answer to the interplea avers that the amount of $1,200 due plaintiff is for the purchase price of the goods and merchandise attached and levied upon by the sheriff in this cause. The answer further states that while Goldenburg was so indebted to the plaintiff, etc., for the goods and merchandise levied upon and seized in this cause, etc., the said fraudulent sale was made. We think that the answer clearly states and shows that the debt due plaintiff, therein alleged, was existing at the time of the alleged fraudulent sale, and that the motion in arrest was properly overruled.

The judgment of the circuit court for the reason given above, is reversed and the cause remanded. All concur.