ABRAM KRAMER ET AL., Respondents, v. JOSEPH A. WILSON, ADMINISTRATOR, Appellant.

St. Louis Court of Appeals, May 4, 1886.

1. EVIDENCE—ATTACHMENT—ADMISSIONS— COMMERCIAL AGENCY.—In attachment, on the ground of fraudulent conveyance, or concealment by the debtor of his property, evidence of his statements as to his assets and liabilities, made by him to a commercial agency about six weeks before the suit was brought, is admissible on the question of intent.

2. ——— Statements made by a mercantile agency as to the debtor's financial standing, upon the faith of which the plaintiff may have extended credit, are inadmissible under such an issue.

3. ——— BOOKS OF ACCOUNT.—In such an action, the debtor's books of account, indicating the amount of funds in his safe immediately before the execution of the alleged fraudulent conveyance, are admissible.

4. ——— OPINIONS. Under certain circumstances, it is not error to permit the defendant, who is the debtor's administrator, to give his opinion as to the meaning of certain entries on the debtor's books.

5. ——— The debtor not having done any business since the alleged

fraudulent conveyance, it is competent for his administrator to tes-
tify as to the kind and character of assets which came into his
hands as such administrator.

APPEAL from the St. Louis Circuit Court, AMOS M.
THAYER, Judge.

*Affirmed.*

GRAVES & SHEWALTER, and W. C. MARSHALL, for
the appellant.

NATHAN FRANK, and DYER, LEE & ELLIS, for the
respondents.

LEWIS, P. J., delivered the opinion of the court.

This is a suit by attachment, which was begun in
Lafayette county, against the defendant's intestate,
William Knipmeyer, in his lifetime, and, after succes-
sive changes of venue, was finally heard and determined
in the circuit court of the city of St. Louis. There was a
jury trial and a verdict for the plaintiff on the plea in
abatement, and afterwards a judgment by default
against the defendant, on the merits.

The grounds for the attachment, as charged in the
affidavit, were:  1. That the defendant had fraudulently
conveyed or assigned his property or effects, so as to hin-
der or delay his creditors.  2. That the defendant had
fraudulently concealed, or removed, or disposed of his
property or effects, so as to hinder or delay his creditors.
3. That the defendant was about fraudulently to convey
or assign his property or effects, so as to hinder or delay
his creditors.  4. That the defendant was about fraudu-
lently to conceal, remove, or dispose of his property or
effects, so as to hinder or delay his creditors.

The plaintiffs undertook to show that, on and prior
to July 1, 1881, the defendant, now deceased, was doing
a small mercantile business in the town of Higginsville,
Lafayette county, and about that time conceived the in-
tention of purchasing a large quantity of goods on credit,

with a view to disposing of them for cash, and concealing the proceeds without paying for the goods. That thereupon he made a number of *first purchases* from eleven different firms, located in several cities, amounting in all to $6,786.55. That, on December 16, 1881, when but few of these bills had matured, and Knipmeyer's total indebtedness amounted to $18,827.06, he sold out his entire stock to Grove Young for $6,200, and soon thereafter proposed to all his creditors to settle with them at twenty-five cents on the dollar, saying that he could do no more. That all these transactions were done on the part of Knipmeyer with the design to hinder, delay, and defraud his creditors, including the plaintiffs. On December 17, 1881, the attachment was sued out.

The plaintiffs introduced in evidence the deposition of Leverett Minor, an agent representing Dun & Co.'s Mercantile Agency, who testified that, on October 1, 1881, he called on Knipmeyer in the usual course of his business, to ascertain his financial standing and condition. Knipmeyer then told the witness that his assets would invoice seven thousand or eight thousand dollars, and that his total indebtedness was about two thousand dollars, none of it overdue. Error is assigned on the admission of this testimony, for irrelevancy and incompetency, as being too remote in point of time from the sale to Young, and as having no bearing on the *bona fides* of that transaction.

Where the object of testimony is to prove an act done the cases are rare in which it is permissible to go beyond the immediate vicinity, in point of time or otherwise, of the act itself, unless it be in the way of proving an admission by the party implicated. But where there is no dispute about the act done, and the sole purpose is to show with what intent it was done, a much larger latitude is necessarily allowed. Intention is a continuing condition, in many cases, that may exist for months, or for years. So long as it points in the same direction, there can be no impropriety in proving its presence, within

reasonable bounds, at any time antecedent to the act. In fact, the longer the time, in a majority of cases, the more thoroughly matured would seem to be the purpose. No probing process can lay bare a man's secret intentions. They must be proved, if at all, by surrounding facts and circumstances, of which it may be true that no one of them, taken alone, would be available for any purpose, and yet, when all are considered and compared together, the most satisfactory proof is found of what the party intended to accomplish. The case of *Singer v. Golden-burg* (17 Mo. App. 549), is parallel with this in many particulars. That proceeding attacked the *bona fides* of a sale of goods made by Goldenburg to Franke in November, 1881. It was held proper to introduce in evidence facts tending to show that, when Goldenburg purchased the goods on credit in the August previous, he then had the intention of defrauding the plaintiff. This fact, coupled with the subsequent sale, and with the further fact that the goods were not paid for by Goldenburg, was considered to be competent and persuasive evidence of Goldenburg's intention at the time of his sale to Franke, three months later. The same principle prevailed in *Lindauer v. Hay* (61 Iowa 663) ; *Shipman v. Seymour* (40 Mich. 274) ; *Angrave v. Stone* (45 Barb. 35), and other cases. We think there was no error in the admission of the testimony complained of. The declaration made to Minor, coupled with Knipmeyer's sudden insolvency but a short time afterwards, and his alleged inability to pay more than twenty-five cents on the dollar, had a strong tendency to show that that declaration was a part of his plan for obtaining large and unaccustomed credits, to the ultimate end of fraudulently absorbing their fruits.

The defendant administrator, as a witness for the plaintiffs exhibited a little book as pertaining to the estate of his intestate, and read therefrom the following entries :

"*J. H. Knipmeyer:*

"1881, Nov. 30, To account......$315.50    $......
     "    "    By cash....................    5.00
     Dec.    "    By cash....................    10.50
     "    15, To cash in safe...2,000.00    ......
     "    "    To gold......... 316.00    ......
     "    "    Paper .......... 305.00    ......
Got out of safe............................. 305.00
To ditto for friend ......................... 100.00

     Total.....................$2,936.50    $420.50 "

This testimony was objected to as irrelevant, incompetent, and inadmissible, because unintelligible. It would appear that the object of the testimony was to show that, at the dates mentioned, the intestate held concealed in the hands of his brother, and inaccessible to his creditors, a sum of money represented by the difference between the footings of the two sides of the account. On cross-examination, the witness was asked whether, as a book-keeper, he could tell what the entries indicated. The court intimated that the question was not appropriate to be put to an expert, but told the jury that, if they entertained any doubt about the matter, the witness might answer the question. The jury desired to hear his answer, whereupon the witness said that he would not undertake to say, from the entry, who J. H. Knipmeyer owed, if he owed anybody. The defendant excepted to the remarks made by the court, and now assigns its action in this regard for error. If the proceeding was so irregular (which we do not concede) as to amount to error, we do not perceive how the defendant was in any way prejudiced by it; since the answer given at last by the witness would appear to have been the very one which the defendant was seeking to elicit. Some other entries were similarly introduced from the same book; the defendant objected to them, and repeats his objections

here.  It may suffice to say that, in our opinion, they are alike untenable with those just considered, and are not of a character to demand elaborate discussion.  The entries were certainly admissible for whatever they might prove to be worth.

The plaintiff, against the defendant's objections, proved by the defendant administrator the amount and character of the assets that had come into his hands, of the estate of his intestate.  It appeared that the intestate had done no business between the time of his sale to Young and that of his death, about two years later.  The evidence had a legitimate tendency to show what amount of assets, if any, the intestate had saved, and, perhaps, concealed, from the wreck of his insolvency, in excess of what he represented to his creditors.  It was, therefore, properly admitted.

Arnold, a witness for the plaintiffs, and an employe of one of the attaching creditors, was asked by the defendant, on cross-examination, these questions:  "Did you see any statement made by Dun's Mercantile Agency respecting the credit of Mr. Knipmeyer after the first of October, 1881?"  "In making sales to Mr. Knipmeyer, did you act upon the faith of the report of Dun's Mercantile Agency, or upon what you had previously known of Knipmeyer from your own experience?"  The court properly excluded the testimony.  It had no relevancy to any issue in the case.  The inquiry was as to the acts and intentions of Knipmeyer.  What motives or influences operated on the minds of the creditors in giving him credit had no pertinency to the case.

The appellant says that there was no evidence to support the verdict ; that the sale to Young was attended with every circumstance of openness, fairness, and sufficiency of consideration, to make it valid in law.  This may all be true, as to the sale ; and yet Knipmeyer may have made it in furtherance of a preconceived design to hinder, delay, or defraud his creditors.  There is no attempt to vacate the sale.  The facts proved, taken alto-

gether, certainly had a substantial tendency to show that the debtor's intentions were as charged in the attachment affidavit. The jury found affirmatively on that proposition, and we are not able to perceive that their conclusion could have been improperly influenced by any ruling of the trial court.

No point is here made against the proceedings below, except those which we have already considered, and one or two others having reference to the irrelevancy of testimony admitted. As to these last, it is not shown that any prejudice resulted to the defendant, nor can we discover the remotest possibility of any such effect. The instructions given were unexceptionable, and certainly conceded to the defendant all that he could possibly claim for a fair presentation of his case to the jury.

The judgment is affirmed, with the concurrence of Thompson, J. ; Rombauer J., not sitting.