## M. T. HADLEY v. H. F. ADSIT.
### No. 48.

1. INSOLVENT DEBTOR—*Chattel Mortgage.* A debtor, although in an embarrassed condition and even in failing circumstances, may prefer one of his creditors to the exclusion of other creditors, if he act in good faith in such preference, and such preference may be made by way of chattel mortgage on so much of his property as is necessary to secure the payment of the debt.

2. ——— *Right to Prefer Creditors.* A creditor may take a chattel mortgage to secure the payment of his debt, if the debt be *bona fide* and the mortgage be taken in good faith, and the mortgage will be valid, although the effect may be to delay and entirely to defeat other creditors in the collection of their debts from the mortgagor.

3. ———— *Collusion with Mortgagee—Fraudulent Transfer.*
Where L. is indebted to H. in the sum of $450, and to secure
such indebtedness L. gives a chattel mortgage on a stock of gro-
ceries and store fixtures of the value of $1,400; and H., before
taking possession of the mortgaged property, learns that L. is in-
debted on said stock of groceries and fixtures to wholesale mer-
chants, who are pressing him for payment, and he has no other
property outside of such stock of goods and fixtures with which
to pay his creditors, and H. then, with full knowledge of these
facts, enters into a fraudulent combination with L. to defraud his
creditors and prevent them from securing any part of their debts
out of the surplus of the mortgaged property, and under such
fraudulent arrangement takes the transfer of said stock of goods,
fixtures and all book-accounts due to L., then the whole transac-
tion, from first to last, including the chattel mortgage, as against
creditors, is void, and the transaction, being tainted with fraud,
would extend clear through and vitiate the title to the goods thus
acquired.

MEMORANDUM.—Error from Crawford district court;
S. H. ALLEN, judge. Action in replevin by M. T. Had-
ley against H. F. Adsit. Judgment for defendant.
Plaintiff brings the case to this court. Affirmed.
The opinion herein, filed December 4, 1895, states the
facts.

*Thomas W. Wells & Sons*, for plaintiff in error.

*Fuller & Randolph*, and *B. S. Gaitskill*, for defendant
in error.

The opinion of the court was delivered by

JOHNSON, P. J.: On the 15th day of May, 1891, M.
T. Hadley commenced an action in replevin in the dis-
trict court of Crawford county to recover possession of
a certain stock of groceries, consisting of all kinds of
groceries usually kept in a retail grocery store, to-
gether with the store fixtures, which had been levied
upon by H. F. Adsit, constable of the city of Girard,
in said county. The stock and fixtures had been levied
upon by said constable as the property of J. P. Linthi-

cum.   The goods were taken by the sheriff under the order of replevin and delivered to Hadley.   The defendant, Adsit, filed his answer to the petition of the plaintiff, denying the allegations of the petition, and upon these issues the case was tried before the court and jury, and resulted in a verdict for the defendant, finding his interest in the goods to be $371.66; and upon this verdict the court rendered judgment against the plaintiff, that he immediately return the possession of the goods to the defendant, and that if the goods could not be had, the defendant recover of and from the plaintiff the sum of $371.66, and costs of suit. The plaintiff excepted, and brings the case to this court for review.

The evidence shows that Linthicum formerly owned the stock of groceries and fixtures and was running a retail grocery store in Girard, Crawford county, Kansas.   He had borrowed at different times from Hadley the aggregate amount of $450, and on the 2d day of May, 1891, he and his wife gave Hadley their promissory note for the sum of $480.98, due one day after date.   Hadley and Hobbs were also sureties for Linthicum to the First National Bank of Girard for $120, and, to secure Hadley and Hobbs in the payment of these several sums, on said 2d day of May, 1891, Linthicum and his wife executed and delivered to Hadley and Hobbs a chattel mortgage on the stock of groceries and store fixtures then in said store.   The chattel mortgage was on the same day filed in the office of the register of deeds of Crawford county.   At that time Linthicum was indebted in several small sums to wholesale merchants at Fort Scott and Kansas City, and his creditors were pressing him for payment of these bills or security.   Representatives of several of the wholesale houses came to Girard within a few

hours after the chattel mortgage was placed on file,
and demanded payment of their bills or security for
the same.   On the evening of the 5th of May, while
the representatives of these wholesale houses were
clamoring for payment or security, Hadley took pos-
session of the store, fixtures and all book-accounts due
the store, and with full knowledge that Linthicum
was indebted to several wholesale houses.   On the
same night Hadley bought the entire stock of grocer-
ies, store fixtures and all book-accounts due from pa-
trons of the store to Linthicum, and in consideration
of such transaction returned to Linthicum his note
that was secured by chattel mortgage and turned over
to him a pretended deed for a quarter-section of land
in Stone county, Missouri, purporting to be executed
by some unknown party, with the name of the grantee
left blank.

On the 6th day of May, 1891, several suits were
commenced against Linthicum before a justice of the
peace by wholesale merchants, and in due course of
time judgments were rendered against him on said
claims for groceries furnished by wholesale mer-
chants, and executions were issued thereon and placed
in the hands of Adsit, constable, and he levied upon
the stock of groceries and fixtures in controversy.
For the recovery of the possession of these groceries
and fixtures this replevin suit was commenced.

The plaintiff claimed to be the owner of the goods
in good faith;  and the defendant claimed that the
chattel mortgage and the subsequent transfer of the
goods were with intent to defraud the creditors of
Linthicum, and that the plaintiff was knowingly a
party to such fraudulent purpose of Linthicum.
There was great conflict in the testimony on the trial
of the case.   Great latitude was allowed to both sides

during the trial. The plaintiff attempted to show that the transaction was all in good faith for a valid existing indebtedness and without any knowledge on his part. The defendant attempted to prove the relations existing between the parties, their secret dealings, the means of knowledge the plaintiff had of the debts owing by Linthicum to wholesale merchants, the presence of representatives of wholesale houses, the presence of plaintiff in the store while they were there demanding pay or security, conversations by them with plaintiff, his statement and promises in regard to second mortgages, his refusal to allow the mortgagor to give a second mortgage, and, after a full knowledge of the indebtedness of the mortgagor, his purchase of the entire stock of groceries, fixtures, etc. These facts were all before the jury for their consideration, and it was for them to find under all the evidence whether the transactions between the plaintiff and Linthicum were in good faith and for the purpose of securing an honest debt, or whether the whole matter was tainted with fraud within the knowledge of the plaintiff.

The only error complained of on the trial is in the instructions of the court to the jury. Neither party requested the court to give special instructions, and the court gave such general instructions as were required under the pleadings and the evidence. The first proposition set out in plaintiff's brief and discussed is, that J. P. Linthicum had a right to prefer and secure M. T. Hadley to the exclusion of all the rest of his creditors. This is true, if the transaction of Linthicum was solely for the honest purpose of securing the plaintiff, and the plaintiff also had the right to take the security given, if it was solely for the purpose of securing an honest indebtedness from

Linthicum to himself; but if done for the purpose of defrauding the creditors of Linthicum, and plaintiff knew of the purpose, then he would not be protected under the pretense of securing his own debt.   A creditor may take a mortgage to secure the payment of his debt, if the debt be *bona fide* and the mortgage be taken in good faith as security, although the effect may be to delay or entirely to defeat other creditors in the collection of their debts from the mortgagor, but the transaction must be free from fraud on the part of the mortgagee.   In the case of *Arn v. Hoerseman*, 26 Kan. 413, VALENTINE, J., delivering the opinion of the court, says:

·"The debtor has a right, even when financially embarrassed, even when in failing circumstances, to prefer one creditor over another, if he chooses to do so.   This is necessarily so, for if he could not prefer one creditor over another, it would be difficult for him to pay any creditor.   Of course the preferred creditor must act in good faith, and must not obtain more than is honestly and justly due him; and if he does so act in good faith he does not become liable to any other creditor, although his act, with that of the debtor, may have the effect to wholly defeat the collection of all other creditors' claims."

In the case of *Tootle v. Coldwell*, 30 Kan. 125, VALENTINE, J., delivering the opinion of the court, says:

"We think it is also well settled, in Kansas, that a debtor, even in failing circumstances, may prefer creditors if the same is done in good faith; and this not only in the form of actual payment of money to the particular creditor preferred, but also in the form of the sale or appropriation of property, or the giving of chattel mortgages to such creditors."   See, also, *Randall v. Shaw*, 28 Kan. 419; *Avery v. Eastes*, 18 id. 505; *Bishop v. Jones*, 28 id. 680.

The particular instruction complained of reads :

"It is conceded that the defendant, Adsit, was a constable, and that he held executions amounting in all to $371.66, which were valid as against Linthicum ; but the plaintiff claims that Linthicum had no interest in this property, and consequently that the defendant had no right whatever to levy on it. The principal contention in this case is as to whether or not the transactions between the plaintiff and Linthicum were fraudulent. The defendant claims that the transactions were had for the purpose of defrauding Linthicum's creditors, and that specially the arrangement testified to with reference to the exchange of Linthicum's interest in this stock of goods for the Missouri land was fraudulent, and made for the purpose of placing this property beyond the reach of Linthicum's creditors ; and upon that proposition I instruct you, that if you find from the evidence that the transaction was fraudulent as between Hadley and Linthicum, then you must find for the defendant."

We think this instruction was correct under the evidence and the chattel mortgage. The mortgage shows the indebtedness to be $480.98, and also states that the stock of goods and fixtures were of the value of $1,400, and then, in the transaction of the pretended sale of the stock and fixtures, the plaintiff got the store accounts of Linthicum, which were not included in the mortgage. The amount of the store accounts is not given in the testimony. This instruction states the law clearly under the pleadings, evidence and claim of the parties, and leaves the determination of facts to the jury.

It is also claimed that the court erred in the following instruction to the jury :

"It is the duty of all men to act uprightly in such transactions, and to do nothing to occasion loss to other creditors seeking satisfaction of their claims.

If Linthicum in this case had property, had an interest in that stock of goods, it was the duty of both Linthicum and Hadley to leave whatever interest he had where it could be reached by Linthicum's creditors, and to do nothing which would tend to defeat them in their legitimate efforts to collect their claims ; and if they did anything for the purpose of defeating the fair and legitimate efforts of the creditors to collect their claims, it would render this transaction void entirely as against the defendant.    Hadley, on the other hand, had a perfect right to secure himself, if you find that he had a valid indebtedness.    It was his right and privilege to be diligent and to first secure himself, and Linthicum had a perfect right to secure Hadley, if he owed Hadley a debt.    If he owed Hadley a debt, he had a perfect right to secure him in preference to any of his other creditors ; and if you find from this testimony that he did in fact owe Hadley, and that the mortgage he gave to Hadley was to secure a *bona fide* indebtedness then, that transaction would be valid.    But if you find furthermore, that after having obtained security for his claim he then went further and entered into a transaction with Linthicum for the purpose of placing this property beyond the reach of Linthicum's creditors and depriving them of whatever surplus there might be over and above his mortgage, then the whole transaction, from first to last, including the chattel mortgage, would be void, and Hadley would have no rights as against those creditors ; and if the transaction is tainted with fraud at all, the taint extends clear through and vitiates entirely his title.''

The claim is that Hadley's title up to the time he took actual possession is not questioned, and that he certainly had a good title then.    Hadley's title was questioned throughout the entire transaction.    The cross-examination of the plaintiff by defendant was on the theory that his claim was a sham and a mere pretense to get the stock of groceries and fixtures ut of the reach of Linthicum's creditors for the

purpose of defrauding them in the collection of their debts. The whole transaction between Linthicum and Hadley was a shadowy affair — one that was calculated to raise a suspicion that the transaction was questionable. The chattel mortgage was taken and placed on file three days before the clerk in the store was informed of it, and when the representatives of wholesale houses began to press for payment or security the parties to this mortgage began to equivocate, hesitate, and make different representations in relation to the amount due from Linthicum to Hadley. The plaintiff refused to allow the giving of a second mortgage on the stock, and, while creditors were in and about the store, the plaintiff and Linthicum, with their attorneys, met together in the night-time, and what was termed an absolute sale of all the stock, fixtures and book-accounts was made by Linthicum to Hadley.

We think that if this transfer was made for the purpose of defrauding the creditors of Linthicum it tainted the entire transaction with fraud from its inception; that if the plaintiff acted with a fraudulent purpose in the final purchase of this stock and fixtures, it destroyed all the acts of good faith that may have preceded. It was his duty, in taking the mortgage and possession under it, after he became aware of the pressing demands of wholesale houses for payment from the mortgagor, to act in all subsequent matters in good faith toward the creditors of Linthicum, and if he entered into any scheme thereafter to prevent the creditors from receiving the surplus over and above the payment of his claim it was a fraud from its inception. We think this instruction was correct, under the evidence in this case. The whole question of the purpose and intent of the parties to the chattel mortgage, taking possession of the stock, transfer of

the stock of groceries, fixtures, and book-accounts, was fairly submitted to the jury, under the evidence and proper instructions of the court, and the verdict of the jury is supported by the evidence.

The judgment of the district court is affirmed.

All the Judges concurring.