R. L. McDONALD *et al.* v. W. B. SWISHER.

No. 11245.

1. PRACTICE, DISTRICT COURT— *Action on Mandate from Supreme Court.* A judgment based upon conclusions of fact and law found by the district court was reversed by this court and the cause remanded for further proceedings in accordance with the views expressed in the opinion. The decision here was to the effect that the trial court erred in its conclusion of law adjudging invalid a chattel mortgage held by the plaintiffs in error. *Held,* that the refusal of the trial court to enter judgment upon the the mandate was not error, especially so since the application for such action was not made until after continuances of the cause

over two terms of court, the taking of depositions by both parties, and the discovery of important evidence after the receipt of the mandate, compelling a second trial on a new and different theory from the first.

2. CHATTEL MORTGAGE—*Lien Destroyed by Fraudulent Contract.* M. & Co., chattel mortgagees, having a *bona fide* lien subject to two prior mortgages which were fraudulently made to hinder and delay creditors of the mortgagor, entered into an agreement with the holders of the prior mortgages by which the property included in each was to be replevied by M. & Co. from an officer then in possession and turned over to said first two mortgagees, who were to sell the same, first paying M. & Co.'s mortgage, and then apply the surplus in satisfaction of their own liens. *Held*, that this arrangement and its execution discharged the lien of M. & Co. on the property and its proceeds under their mortgage as against creditors of the mortgagor, M. & Co. having such notice of the fraudulent character of the prior conveyances as is mentioned in the next paragraph.

3. ―――― *Notice of Fraudulent Conveyances.* The agreement referred to having been made after M. & Co. had been told that the two prior mortgages were fraudulent, and after the coroner was in possession of the mortgaged property under writs of attachment against the debtor in suits where the petitions charged that the said mortgages were given without consideration and for the purpose of hindering, delaying and defrauding creditors, notice sufficient was conveyed to M. & Co. concerning the good faith of the prior mortgages to put them upon inquiry, thus imposing a duty which they could not neglect to perform without being chargeable with full knowledge of the fraudulent nature of said conveyances.

Error from Sherman district court; CHARLES W. SMITH, judge. Opinion filed June 10, 1899. Affirmed.

*Johnson, Rusk & Stringfellow*, for plaintiffs in error.

*A. H. Ellis*, and *F. T. Burnham*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This action was commenced on March 31, 1891, being a suit in replevin brought by the plaintiffs in error, who were plaintiffs below, against

W. B. Swisher, then coroner of Sherman county, to recover possession of a stock of merchandise valued at $5500. The plaintiffs below alleged ownership of the property, their claim to the same being based on a chattel mortgage showing on its face a consideration of $2000, executed by one W. H. Daly to them on March 25, 1891, covering the goods involved in the suit. This mortgage was made subject to two prior mortgages, one held by the Sherman County State Bank and another by William Bowers, for the sums of $6334.86 and $1050 respectively. It is admitted that the two mortgages last mentioned were given without consideration and were fraudulent as against creditors of Daly. In *McDonald v. Swisher*, 57 Kan. 205, 45 Pac. 593, that fact was held not to invalidate the mortgage now before us. When this suit was commenced the defendant in error, Swisher, as coroner of the county, had levied on the goods in question under three writs of attachment, issued at the instance of creditors of Daly, and was in possession of the property under said writs. Said attaching creditors, standing back of the coroner, are the real parties in interest in this replevin action.

No question is made of the good faith of the mortgage of the plaintiffs in error when originally given. The actual amount due them, however, was $1787.68 on an account for goods sold ; but the court found that the incorporation of the excess arose from want of knowledge of Daly of the exact amount of his indebtedness, and was due to no fraudulent purpose on his part. After the above-mentioned writs of attachment had been levied on the goods, and the same were in the custody of the coroner, the plaintiffs in error through their agent, Rice McDonald, entered into a verbal agreement, afterward and on April 1, 1891, re-

duced to writing, with M. B. Tomblin, agent of the Sherman County State Bank, and William Bowers, whereby the plaintiffs agreed to bring this replevin action in their own names to recover from Swisher the possession of the goods in suit. It was further stipulated that upon possession being obtained by the plaintiffs under the proceedings in replevin, they would turn the goods over to the bank and Bowers and permit them, without molestation, to foreclose one or both of their said mortgages on the goods so delivered, and, in return for this, the bank and Bowers agreed to sell the replevied goods to the best advantage, and, after deducting expenses of sale, to satisfy first the claim of plaintiffs to the amount of $1700, and afterward apply the balance of the proceeds to the payment of the mortgages held by the bank and Bowers in such manner as might be agreed upon between the parties. As soon as the plaintiffs in error obtained possession of the goods by virtue of the replevin action, the same were turned over to the bank and Bowers, pursuant to the agreement. The value of the goods at the time this action was begun was $5500, and, as found by the court, the plaintiffs in error have realized at least the sum of $3260, receiving the same through M. B. Tomblin, president of the bank, who had control of the deposits arising from the sale of the goods.

The court found that the agreement above mentioned was fraudulently and secretly made between plaintiffs in error and Tomblin and Bowers, not only to obtain possession of the goods for the purpose of applying their value to the satisfaction of their own claim, but also for the purpose of enabling said Sherman County State Bank and William Bowers to use the residue of the moneys arising from the sale of said

goods, after plaintiffs were paid, for the payment of the claims of the bank and Bowers; and that the existence of the said agreement between them came to the knowledge of defendant below about August, 1897. Judgment was rendered for the defendant. The plaintiffs below come here on proceedings in error.

The first complaint is that the trial court erred in refusing to enter judgment for the plaintiffs below on the mandate of this court in the former case sent down July 11, 1896. The argument is that the findings of fact made in the first case were undisturbed by this court, and that upon receipt of the mandate there was nothing to be done except to enter judgment for the plaintiffs below. The mandate does not so read. It says:

"Whereas, at the July session of the July term of said supreme court, A. D. 1896, on consideration of the said petition in error, it was ordered and adjudged by the said supreme court that the judgment of the district court be reversed and that the cause be remanded for such further proceedings as are in accord with the views of this court as expressed in its opinion, a certified copy of which is herewith transmitted."

We cannot agree with the plaintiffs in error in this contention. First, no judgment was ordered by this court to be entered on the findings in the former case. In *Cahn v. Tootle*, 58 Kan. 260, 48 Pac. 919, it is said: "If it had been the view of this court that judgment should have been entered without further proceedings, an express direction to that effect would have been embodied in the mandate." Again, in *Crockett v. Gray*, 31 Kan. 348, 2 Pac. 810, it is said: "The practice in this court is to state specifically in the opinion and mandate the judgment or order which is to be entered by the trial court, whenever it is thought a final disposition ought to be made upon the record as

McDonald v. Swisher.

it stands; and when simply a reversal is ordered, a new hearing in the trial court is intended.''

Second, it appears that after the receipt of the mandate the cause was docketed for the November term, 1896, in the district court, and was passed from time to time until the November, 1897, term, being continued over the April and July terms.   Before the motion of plaintiffs in error to enter judgment in their favor upon the mandate was made, notices had been served and depositions taken in the cause in Denver, Colorado Springs, Beatrice, and in Iowa, the two former depositions being taken at the instance of the plaintiffs below.   The existence of the written agreement between McDonald & Co. and the bank and Bowers was not discovered by the defendant in error until after the mandate had been sent down to the district court.   It will be seen that, by the preparations made for another trial, the plaintiffs in error did not regard their rights under the chattel mortgage to have been fully adjudicated by this court in the first decision of the case, and made no motion for a judgment on the mandate until about sixteen months after it had been sent down to the trial court and after considerable proof had been taken by way of depositions and filed in the case.   Evidence was also introduced on the motion, showing the agreement between plaintiffs in error and the bank and Bowers, and that the existence of the same was not discovered by defendant below until after the receipt of the mandate.   This evidence was important.

Direction by this court to the court below ordering a judgment is not conclusive upon the latter if new and different facts are presented in the case.   The production, however, of merely cumulative evidence would be insufficient.   In this case the discovery of

the agreement above mentioned introduced a new feature into the controversy not known or referred to at the former trial, compelling the court to retry the case on a different theory.

In *Conroy v. Perry*, 26 Kan. 473, this court said:

"It is true that the mandate issued from this court directed a judgment upon the findings in favor of defendant, but we have heretofore held that such mandate does not compel a mere technical, blind and literal following thereof. It means simply that upon the facts as thus stated, such a judgment ought to be entered, leaving full discretion to the district court to act upon any new facts presented, and to act thereon as justice and equity may require. The idea that because this court upon certain facts has directed the entry of a specific judgment, the district court is therefore concluded from acting upon further facts presented is absurd."

In *Duffitt & Ramsey v. Crozier, Judge*, 30 Kan. 150, 1 Pac. 69, the court held:

"The district court, upon being directed by the mandate of the supreme court to enter judgment upon the findings of fact found by the trial court for the defendant below, in a case brought on error to the supreme court, must execute the mandate, unless there shall be presented new and different facts in the case."

Moreover the record does not contain any of the conclusions of law or fact found by the court below on the former trial. These findings, which are said in the brief to be forty-eight in number, cannot be considered, nor can their legal effect be known to us. (*Parkhurst v. National Bank*, 55 Kan. 100, 39 Pac. 1027.)

The principal complaint of the plaintiffs in error is that the conclusion of fact No. 17 is not supported by the evidence. It reads:

"That afterwards, and on the 28th day of March, 1891, said Rice McDonald, as agent of these plaintiffs,

received notice of such facts and circumstances touching the character of the mortgages executed by Daly to the bank and Bowers, as to which, if he had made inquiry as a prudent man, would have led him to a knowledge of the fraudulent character of said mortgages as hereinbefore found.   That he failed and neglected to make such inquiry as he should have made as a prudent man.''

The testimony showed that Rice McDonald was the general agent of the plaintiffs in error and that Mr. Ellis, the attorney for the attaching creditors, talked with him before this replevin action was begun and told him that the mortgages of the bank and Bowers were fraudulent and tried to induce him to join in the effort to set aside said mortgages as fraudulent as against creditors.   This McDonald refused to do. The evidence further showed that at the time of this conversation the coroner was in possession of the goods under writs of attachment issued against Daly in three separate suits instituted by his creditors, and that Mr. Andrews, the attorney for R. L. McDonald & Co., had the papers in said cases in his office.   The petitions in said attachment cases made Daly, the bank and Bowers defendants, and alleged that the chattel mortgages held by the latter were fictitious and fraudulent, and made without consideration and for the purpose of hindering, delaying and defrauding the creditors of said Daly, and asked that the same, for said reasons, be set aside and held for naught.   Whatever might be the legal effect of the notice imparted by Mr. Ellis to the agent of plaintiffs in error that these mortgages were fraudulent, we think that the possession by the coroner of the goods under the writs of attachment was sufficient to excite an inquiry from R. L. McDonald & Co. as to the grounds of said attachment; and whether Mr. Andrews, the attorney for plaintiffs,

read the papers in the attachment suits or not, it is shown that he had them in his office and had every opportunity to inform himself as to the charges of fraud made by the attaching creditors in their petitions and affidavits concerning the two mortgages.

It will not do to say, as plaintiffs in error contend, that no duty was owing from R. L. McDonald & Co. to these attaching creditors, and that any investigation made could have been attributed to nothing better than mere idle curiosity. Suppose the contract relating to the replevin suit and the disposition of the goods had never been made, but instead the plaintiffs in error on the same date had bought the mortgages of the bank and Bowers: could it be said that, with the information imparted to them by Mr. Ellis and the notice resulting from the possession of the goods by the coroner under the writs of attachment, they could assume the attitude of innocent purchasers? The plaintiffs, having a mortgage themselves, could not wholly ignore the claims of creditors who were interested in having the mortgaged property bring as great a price as possible, and in seeing that the value of the surplus, after plaintiffs' mortgage was satisfied, was not diminished, as this surplus was the fund out of which their claims against Daly might be paid. No chattel mortgagee can recklessly, or by resort to fraud, waste or dispose of the goods upon which he has a lien, though the same be entirely valid, to the prejudice of creditors less favored in having no security. In such case the mortgagee is required to exercise such good faith as is demanded of trustees in general, to the end that after the mortgage is paid there may be something saved for the general creditors. We think there was evidence sufficient to sustain said finding. In the case of *Collingsworth v. Bell*, 56 Kan.

338, 43 Pac. 252, Mr. Justice Allen, speaking for the court, said :

"The position taken by counsel for plaintiff in error is, that the validity of the mortgage to J. W. Rankin was fully established, and was assumed by the court in the instructions to the jury, and this being so, the right of the mortgagee to hold possession of the goods himself, or to transfer them to whomsoever he pleased and for whatsoever consideration, was absolute, and could not be challenged on the ground of fraud by the creditors of Rankin Bros. ; that, as against the mortgagee, Rankin Bros. had no attachable interest in the property, and that their creditors had no standing for an attack on the validity of any transfer of the property the mortgagee might see fit to make. . . . There is much plausibility in the argument, but it is not sound. Although the legal title to mortgaged chattels and the right of possession after condition broken vest in the mortgagee, that title is not a full and absolute title, but is still subject to the equitable rights of the mortgagor, and whatever surplus remains of the mortgaged chattels after satisfaction of the debt is an asset of the mortgagor to which his creditors have a right to look for the satisfaction of their claims. A fraud may be committed by the parties to the mortgage and a purchaser buying from a mortgagee, as against creditors of the mortgagor. If it were not so, a mortgage for a trifling sum on a large stock of goods might be used as a means for perpetrating the grossest kind of a fraud on creditors."

Analogous to the case at bar is that of *Hadley v. Adsit*, 3 Kan. App. 122, 42 Pac. 836. Linthicum, a merchant, was indebted to Hadley and gave him a mortgage on his stock of goods as security. Possession was taken under this mortgage. The parties then entered into an agreement to defraud the creditors of the mortgagor "and prevent them from securing any part of their debts out of the surplus of the mortgaged property." To accomplish this a fraudu-

lent transfer of Linthicum's equity of redemption was made to Hadley. Creditors of Linthicum obtained judgments and levied on the goods in Hadley's possession. The latter brought replevin for the goods, and this action against the officer was the case under consideration. The district court instructed the jury, in substance, that if they found that Hadley, the mortgagee, after taking his chattel mortgage, went further and entered into a transaction with Linthicum for the purpose of placing his property beyond the reach of Linthicum's creditors and depriving them of whatever surplus there might be over and above his mortgage, then the whole transaction from first to last, including the chattel mortgage, would be void, and Hadley would have no rights as against those creditors ; and if the transaction was tainted with fraud at all, the taint exists clear through and vitiates entirely his title. Commenting on this instruction, Johnson, presiding judge, used this language :

"We think that if this transfer was made for the purpose of defrauding the creditors of Linthicum it tainted the entire transaction with fraud from its inception ; that if the plaintiff acted with a fraudulent purpose in the final purchase of this stock and fixtures, it destroyed all the acts of good faith that may have preceded. It was his duty, in taking the mortgage and possession under it, after he became aware of the pressing demands of wholesale houses for payment from the mortgagor, to act in all subsequent matters in good faith toward the creditors of Linthicum, and if he entered into any scheme thereafter to prevent the creditors from receiving the surplus over and above the payment of his claim it was a fraud from its inception. We think this instruction was correct, under the evidence in this case."

The plaintiffs in error rendered valuable assistance, through the medium of this replevin suit, to the bank

and Bowers, enabling the latter to absorb the surplus after the mortgage of plaintiffs was satisfied, and withhold the same from creditors having just claims against Daly. R. L. McDonald & Co. might have interpleaded in the attachment suit and, having had a valid mortgage, could have secured payment of the same out of the proceeds of the attached property, leaving a handsome balance to be applied on *bona fide* claims against Daly. Being put upon inquiry as to the good faith of the two prior mortgages, they are held to know what they might have discovered. Their agreement with the other mortgagees places them in the position of attempting to divert the surplus from that channel through which the law directs that it shall go, and convey it to fraudulent claimants having no valid demands upon it.

We think that the conclusions of the court below were fully justified by the evidence, and that its judgment was right. The judgment will be affirmed.